# Exhibit 2

1  Kevin W. Chiang (SBN 252391)
   **EQUITY LEGAL GROUP, P.C.**
2  201 S. Lake Ave., Ste. 506
   Pasadena, CA 91101
3  Telephone:  (818) 928-5677
   Email:  kchiang@equitylegalgroup.com
4
5  Attorneys for Plaintiff
   JANE DOE

Electronically FILED by
Superior Court of California,
County of Los Angeles
4/04/2024 3:49 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By Y. Ayala, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JANE DOE, an individual, | Case No.: 24STCV08543 |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | 1. **Disability/Medical Condition Discrimination;** |
| TELEVISAUNIVISION MANAGEMENT CO., a Delaware corporation; UNIVISION MANAGEMENT COMPANY, a corporation of unknown form; TELEVISAUNIVISION, INC., a corporation of unknown form; and DOES 1-20, inclusive, | 2. **Failure to Engage in the Interactive Process;** |
| | 3. **Failure to Provide a Reasonable Accommodation;** |
| | 4. **Retaliation in Violation of FEHA;** |
| | 5. **Failure to Prevent Discrimination and Retaliation;** |
| Defendants. | 6. **CFRA Interference/Retaliation;** |
| | 7. **Retaliation in Violation of Labor Code § 1102.5; and** |
| | 8. **Wrongful Termination in Violation of Public Policy** |
| | **PUNITIVE DAMAGES**<br>**DEMAND FOR JURY TRIAL**<br>**UNLIMITED JURISDICTION** |

1
COMPLAINT FOR DAMAGES

Plaintiff JANE DOE[1] ("Plaintiff"), hereby, brings this Complaint against Defendants (1) TELEVISAUNIVISION MANAGEMENT CO., (2) UNIVISION MANAGEMENT COMPANY, and (3) TELEVISAUNIVISION, INC. (collectively, "Univision," the "Company," and/or "Defendants"). Plaintiff alleges as follows on knowledge as to herself and her known acts, and on information and belief as to all other matters:

## I.   INTRODUCTION

1. Plaintiff was fired, just weeks after telling Univision and her supervisor (Rita Chertorivski) that she had a "medical emergency" that required her to go to the emergency room ("ER"). Despite this (and other information Plaintiff later shared which revealed she had an actual or perceived disability), the Company and Ms. Chertorivski failed to offer any reasonable accommodations, even though they were required to do so and had an "affirmative duty to make reasonable accommodation(s)" under California law. *See* 2 Cal. Code Regs. § 11068(a) ("An employer or other covered entity has an ***affirmative duty to make reasonable accommodation(s)*** for the disability of any individual applicant or employee if the employer or other covered entity knows of the disability") (emphasis added); *see also Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 887 ("an employer 'knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation. The employer need only know the underlying facts, not the legal significance of those facts.'").

2. Thus, with no options left (due to the Company's unwillingness to engage in any interactive process), Plaintiff proposed resignation on June 26, 2023 as a way to extricate herself from a dangerous medical situation. (Indeed, she was suicidal at the time—hence, the reason she told Ms. Chertorivski she was having a "medical emergency" in the first place.)

3. Yet, *before* this resignation offer was processed and/or accepted by the Company's human resources department, Plaintiff withdrew the offer and requested a protected leave of absence. She did so after consulting with friends, who told her that she had certain leave rights under California law. But, instead of honoring the request to withdraw or rescind the resignation, the Company began gaslighting

---

[1] Plaintiff is proceeding as a Jane Doe, as the disclosure of her identity would hurt her standing and reputation in the legal community and further because this matter involves private, sensitive matters (e.g., suicide).

Plaintiff and outright lied to her, claiming her resignation was final and irrevocable.

4. Of course, all this was untrue. As the facts below show, Plaintiff merely proposed resignation (as an offer) and withdrew it before the Company accepted it, as was her contractual right. *See Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1165 ("Because 'the employment relationship is fundamentally contractual'. . . California courts have . . . held that '[r]esignations are contractual in nature" [citations omitted]. 'As such, a resignation is an offer which may be withdrawn *prior* to its acceptance [citations omitted]. In other words, '[u]nder California law, an employee has a right to rescind a resignation unilaterally (like any contractual offer) only *prior to its acceptance*.'") (emphasis in original).

5. Thus, the Company's decision to ignore her withdrawn resignation of her resignation effectively meant the Company terminated her, after acquiring **<u>direct knowledge of her disability</u>**.[2]

6. For all these reasons, Univision must compensate Plaintiff for its blatant violations of California law.

## II.     THE PARTIES

7. At all times relevant, Plaintiff performed work for and was employed by Defendants in the County of Los Angeles.

8. On information and belief, TelevisaUnivision Management Co. is a Delaware corporation, with its principal place of business located at 500 Frank W. Burr Blvd., Suite 20, Teaneck, NJ 07666. TelevisaUnivision Management Co. is one of three joint employers for whom Plaintiff worked. It is also the joint employer listed on all her pay statements.

9. Univision Management Company is a corporation of unknown form and is the second joint employer for whom Plaintiff worked.

10. TelevisaUnivision, Inc. is a corporation of unknown form and is the third joint employer for whom Plaintiff worked.

11. The true names and capacities of Defendants sued herein as Does 1-20, inclusive are unknown to Plaintiff at this time, but Plaintiff will amend this Complaint if the true names of said

---

[2] Indeed, after sharing she had undergone a "medical emergency," Plaintiff went on to share *additional* information about her medical condition with both Ms. Chertorivski and Lourdes Roman, the Company's HR representative, which qualified her (briefly) for a medical leave of absence under the CFRA.

1  Defendants become known to her. Upon information and belief, each of the Defendants sued herein as a
2  Doe is legally responsible in some manner for the events and happenings referred to herein; and any
3  reference to "Defendant" or "Defendants" shall mean "Defendants and each of them."

4    12. Defendants are individually, jointly, and severally liable for the wrongful conduct alleged
5  herein because each Defendant directly or indirectly, or through an agent or any other person, has
6  exercised control over one another. Plaintiff is informed and believes and based thereon alleges that, at all
7  times relevant, each Defendant has been the agent and employee of its Co-Defendants, and in doing the
8  things alleged in this Complaint has been acting within the course and scope of that agency and
9  employment.

### III. JURISDICTION AND VENUE

  13. This Court has jurisdiction over this action pursuant to the California Constitution, specifically Article VI, Section 10, which grants the Superior Court original jurisdiction in all cases except those given by statute to other courts. The statutes under which this action is brought do not specify any other basis for jurisdiction.

  14. This Court has jurisdiction over all Defendants because, on information and belief, at all relevant times each Defendant has had sufficient minimum contacts in California, or otherwise has intentionally availed itself of California law so as to render the exercise of jurisdiction over it by a California Court consistent with traditional notions of fair play and substantial justice.

  15. Venue is proper in this Court because, on information and belief, each named Defendant transacts business in Los Angeles County, and/or the acts and omissions alleged herein took place within Los Angeles County.

### IV. FACTUAL BACKGROUND

  16. Plaintiff began her employment with Univision as Vice President of Business and Legal Affairs, on or about April 25, 2022. In her new role, she earned an annual base salary of $385,000 and was eligible to receive discretionary bonuses, "with a target amount of 25% [her] annual salary." Her supervisor, at all times relevant, was Rita Chertorivski.

  17. Prior to joining Univision, Plaintiff had a history of generalized anxiety disorder, major depressive disorder, and (of particular note) Post Traumatic Stress Disorder ("PTSD") and had been on

and off medication the past several years:

**PTSD (post-traumatic stress disorder)**
Diagnosis: PTSD (post-traumatic stress disorder)   Noted on: 12/27/2021

18. Her PTSD diagnosis occurred in December 2021 (just months before her employment with Univision began), when she witnessed a 15-year-old pedestrian get hit by a car, only a few feet away from the accident. She shared with her psychiatrist at the time: "I am seriously traumatized . . . [and I'm] having a lot of panic attack[s] & outbursts."

19. As she began her job at Univision, the PTSD she first experienced in December 2021 (along with other stressors in her life) pinned her down and negatively impacted her mental health and psychological wellbeing. But she kept her nose to the grindstone and pushed through it all—working countless hours not only to onboard herself but to also build a team at Univision from the ground up. In less than a year, she interviewed and hired three attorneys, designed her team's external and internal policies, and cultivated strong, strategic relationships with the Company's tax team and external consultants, all the while providing significant legal oversight on more than 115 audiovisual productions and other important assignments affecting Company-wide matters.

20. Her excellent work did not go unnoticed, and in March 2023 she received a glowing Performance Review for her efforts. Her supervisor (Ms. Chertorivski), in fact, noted on her Review that "[Jane Doe] did a[] great job this year, and ma[n]y times she went above and beyond her role and my expectations." The Company also awarded Plaintiff a **_$67,500_** discretionary bonus (for her 2022 work performance), which was slightly higher than the 25% target amount referenced in her offer letter.[3]

| Earnings | rate | hours | this period |
|---|---|---|---|
| PY Dscrt Bonus | | | 67,500.00 |
| **Gross Pay** | | $ | 67,500.00 |

21. Despite her success at Univision, it came at a cost because her battle with PTSD and depression—along with other personal stressors in her life—reached a tipping point in May 2023 that

---

[3] In 2022, Plaintiff earned a gross amount of $264,070.57 in wages. Thus, her $67,500 discretionary bonus was 25.6% her annual prorated salary.

caused her to experience various psychosomatic symptoms, like "stomach pain," hair loss, "weight loss," and "fatigue." The stomach pain, in fact, got so bad that she had to go to the ER in late May/early June 2023.

22. A few weeks later—on June 19, 2023—Plaintiff had to go to the ER a second time because she experienced an anxiety attack that made her suicidal. The next day, on June 20, 2023, she also had to see her primary care physician for the same reasons and told Ms. Chertorivski that she (Plaintiff) would be missing work that morning due to a "medical emergency," disclosing that the night before she had gone to the ER. (In response, Ms. Chertorivski offered no sympathies, failed to engage in the interactive process, and only asked whether Plaintiff would be able to attend a work meeting in the afternoon.)

23. Shortly thereafter, on or about June 21, 2023, Plaintiff received an email from Ms. Chertorivski, seeking a status update on all her projects—something she had never done before. Ms. Chertorivski also placed arbitrary pressure on Plaintiff to finish random tasks and projects, while demanding that Plaintiff attend various internal/external meetings (despite knowing she was going through an acute "medical emergency").

24. When Plaintiff pushed back and asked that one or more upcoming meetings be cancelled because of her ongoing "medical issues," Ms. Chertorivski got angry and aggressive and began criticizing Plaintiff for slacking off. On June 23, 2023, she also called Plaintiff and told her Univision had recently laid off multiple employees and that she (Plaintiff) could be next. Ms. Chertorivski further shared that she (Chertorivski) was up for promotion and needed a group of team members she could "rely on"—in essence telling Plaintiff not to bog her down with petty medical issues or concerns.

25. Realizing she could no longer (in her current mental state) do Ms. Chertorivski's bidding and/or keep up with the unreasonable pace of work that Ms. Chertorivski had artificially demanded, Plaintiff scheduled a meeting with Ms. Chertorivski on June 26, 2023 and verbally shared her *intent* to resign by July 14, 2023. During the meeting, Plaintiff explained that a resignation seemed to make sense, as her physical health was declining and she found herself sick more often than before (pointing to the three or four recent sick leave absences she had had). She also talked about the serious "medical emergency" she had recently suffered that landed her in the ER. Despite all this, Ms. Chertorivski failed (again) to engage in the interactive process and/or discuss any reasonable accommodations with Plaintiff.

26. Also importantly, during this meeting, Ms. Chertorivski never accepted Plaintiff's resignation, telling her instead that they would have to "get in touch with HR" and "discuss" it together, before her resignation could be deemed formally processed and finalized.

27. The next day, on June 27, 2023, Ms. Chertorivski emailed Lourdes Roman in HR, noting as much. Her email stated, "I had a conversation yesterday with [Jane Doe], copied on this email, and she expressed her decision to leave the company. We wanted to reach out to you to **_discuss the process and next steps_**."

28. Two days later, on June 29, 2023, Plaintiff spoke with Ms. Roman in HR and formally requested a medical leave of absence (in lieu of a resignation), revoking her offer to resign. She explained that she was going through a "medical situation" and could not resign. Ms. Roman expressed confusion about this and even snapped at Plaintiff, demanding that she "make up [her] mind." Plaintiff pointed out there was nothing to be confused about, as she had never formally resigned. In response, Ms. Roman directed her to speak to the Leave of Absence team (which Plaintiff did). Ms. Roman also said she would speak to Ms. Chertorivski to clear up any misunderstanding or confusion and would circle back with Plaintiff later that day.

29. A few hours later, Plaintiff separately contacted Ms. Chertorivski and told her about the revoked resignation, as well as her conversation with HR. Ms. Chertorivski became visibly irate and began trembling (as though boiling with anger). She claimed she had begun looking for Plaintiff's replacement. Plaintiff responded by disclosing that she had "another medical episode last night." But before Plaintiff could provide any further details, Ms. Chertorivski bluntly said, "I don't want to hear it" or words to that effect. A few minutes later, she ended the meeting.

30. Later that afternoon, Ms. Chertorivski and Ms. Roman contacted Plaintiff (as Ms. Roman had promised they would) and jointly told her that her employment would end on July 14, 2023. Plaintiff responded by pleading for her job. Holding back tears, she told them she was "advocating for [herself]" and could not bear to lose her job because of a "mental health crisis." She also begged the Company not to use her medical situation against her. Ms. Chertorivski and Ms. Roman were unmoved and said there was nothing they could do, as Plaintiff's resignation was purportedly "final" and could not be undone.

///

31. About a week ***after*** this joint meeting—on or about July 7, 2023 (after Plaintiff had submitted information to the Company about her serious medical condition, placing it on express notice of her medical condition/disability)—Ms. Roman formally ***processed*** Plaintiff's termination, classifying it as a "Voluntary Termination" due to a "Resignation – Personal / Care for Family." The termination subsequently went into effect on July 14, 2023.

32. Since her firing from Univision, Plaintiff has not been able to find a job, despite her best efforts.

33. The foregoing shows Plaintiff was subjected to illegal conduct under the Fair Employment and Housing Act ("FEHA") and the California Family Rights Act ("CFRA"), for which she is entitled to substantial compensation.

34. On or about April 4, 2024, Plaintiff timely filed an administrative charge against Defendants with the California Civil Rights Department and received an immediate "Right to Sue" notice. Thus, Plaintiff has satisfied and complied with all conditions precedent (i.e., the exhaustion of administrative remedies) to jurisdiction before this Court.

## V.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Disability/Medical Condition Discrimination—Against All Defendants)**

35. Plaintiff re-alleges the allegations in paragraphs 1-34, inclusive, and hereby incorporates them by reference as though fully set forth herein.

36. At all relevant times, Univision was an employer within the meaning of the FEHA and thus covered by its provisions.

37. At all relevant times, Plaintiff was employed by Univision.

38. Univision knew Plaintiff had a disability/medical condition (or perceived Plaintiff to have a disability/medical condition) within the meaning of FEHA.

39. Plaintiff was able to perform the essential functions of her job, with or without a reasonable accommodation.

40. Plaintiff is informed and believes, and based thereon, alleges that her actual and/or perceived disability/medical condition was the substantial motivating reason for Univision's adverse

employment actions against her.

41. Plaintiff was harmed.

42. Univision's discrimination towards Plaintiff violated FEHA and was a substantial factor in causing Plaintiff's harm.

43. As a direct, foreseeable, and proximate result of Univision's wrongful conduct, Plaintiff has sustained and continues to sustain, economic damages in earnings and other employment benefits in an amount according to proof.

44. As a direct, foreseeable, and proximate result of Univision's wrongful conduct, Plaintiff has sustained, and continues to sustain, non-economic damages and emotional distress.

45. Plaintiff has sustained general and special damages within the jurisdictional limits of this Court.

46. The acts and conduct of Univision constitute "malice," "oppression," and/or "fraud" (as those terms are defined in California Civil Code § 3294(c)), in that these acts were intended by Univision to cause injury to Plaintiff and/or constituted despicable conduct carried on by Univision with willful and conscious disregard of Plaintiff's rights.

47. The acts of Univision were done fraudulently, maliciously, and oppressively and with the advance knowledge, conscious disregard, authorization, ratification, or act of oppression, within the meaning of Civil Code § 3294 on the part of Univision's officers, directors, or managing agents of the corporation, including the acts Plaintiff's supervisors and Univision's officers and employees. The actions and conduct of Univision were intended to cause injury to Plaintiff and constituted deceit and concealment of material facts known to Univision with the intention of Univision to deprive Plaintiff of her property and legal rights, justifying an award of exemplary and punitive damages in an amount according to proof.

48. As a further direct, legal, and proximate result of Univision's conduct, Plaintiff was caused to and did employ the services of counsel to prosecute this action and is accordingly entitled to an award of attorneys' fees according to proof.

///

///

///

## SECOND CAUSE OF ACTION

**(Failure to Engage in the Interactive Process—Against All Defendants)**

49. Plaintiff re-alleges the allegations in paragraphs 1-48, inclusive, and hereby incorporates them by reference as though fully set forth herein.

50. At all relevant times, Univision was an employer within the meaning of the FEHA and thus covered by its provisions.

51. At all relevant times, Plaintiff was employed by Univision.

52. Plaintiff had a disability/medical condition that was known to Univision.

53. Plaintiff requested that Univision make reasonable accommodation for her disability/medical condition (and/or sufficiently put Univision on notice that she would need a reasonable accommodation) so that she would be able to perform the essential functions of her job.

54. Plaintiff was willing to participate in an interactive process to determine whether a reasonable accommodation could be made so that she would be able to perform the essential functions of her job.

55. Univision failed to participate in a timely good-faith interactive process with Plaintiff to determine whether reasonable accommodation(s) could be made.

56. Plaintiff was harmed.

57. Univision's failure to engage in a good-faith interactive process was a substantial factor in causing Plaintiff's harm.

58. As a direct, foreseeable, and proximate result of the wrongful conduct of Univision, Plaintiff is entitled to the damages described at paragraphs 43-48.

## THIRD CAUSE OF ACTION

**(Failure to Provide a Reasonable Accommodation—Against All Defendants)**

59. Plaintiff re-alleges the allegations in paragraphs 1-58, inclusive, and hereby incorporates them by reference as though fully set forth herein.

60. At all relevant times, Univision was an employer within the meaning of the FEHA and thus covered by its provisions.

61. At all relevant times, Plaintiff was employed by Univision.

62. Plaintiff had a disability/medical condition that was known to Univision.

63. Plaintiff requested that Univision make reasonable accommodation for her disability/medical condition so that she would be able to perform the essential functions of her job.

64. Univision failed to provide any reasonable accommodation(s) to Plaintiff.

65. Plaintiff was harmed.

66. Univision's failure to provide reasonable accommodation(s) was a substantial factor in causing Plaintiff's harm.

67. As a direct, foreseeable, and proximate result of the wrongful conduct of Univision, Plaintiff is entitled to the damages described at paragraphs 43-48.

## FOURTH CAUSE OF ACTION

**(Retaliation in Violation of FEHA—Against All Defendants)**

68. Plaintiff re-alleges the allegations in paragraphs 1-67, inclusive, and hereby incorporates them by reference as though fully set forth herein.

69. At all relevant times, Univision was an employer within the meaning of the FEHA and thus covered by its provisions.

70. At all relevant times, Plaintiff was employed by Univision.

71. As described herein, Plaintiff participated and/or engaged in protected activity.

72. Univision subjected Plaintiff to adverse employment action(s) because of her protected activity as described herein.

73. Plaintiff is informed and believes, and based thereon, alleges that her protected activity was the substantial motivating reason for Univision's adverse employment action(s) against her.

74. Plaintiff was harmed.

75. Univision's retaliatory conduct towards Plaintiff violated FEHA and was a substantial factor in causing Plaintiff's harm.

76. As a direct, foreseeable, and proximate result of the wrongful conduct of Univision, Plaintiff is entitled to the damages described at paragraphs 43-48.

/ / /

/ / /

## FIFTH CAUSE OF ACTION

**(Failure to Prevent Discrimination and Retaliation—Against All Defendants)**

77. Plaintiff re-alleges the allegations in paragraphs 1-76, inclusive, and hereby incorporates them by reference as though fully set forth herein.

78. At all relevant times, Univision was an employer within the meaning of the FEHA and thus covered by its provisions.

79. At all relevant times, Plaintiff was employed by Univision.

80. Plaintiff was subjected to discrimination and retaliation in the course of her employment.

81. Univision failed to take any and all reasonable steps to prevent the discrimination and retaliation.

82. Plaintiff was harmed.

83. Univision's failure to take any and all reasonable steps to prevent the discrimination and retaliation was a substantial factor in causing Plaintiff's harm.

84. As a direct, foreseeable, and proximate result of the wrongful conduct of UNIVISION, Plaintiff is entitled to the damages described at paragraphs 43-48.

## SIXTH CAUSE OF ACTION

**(CFRA Interference/Retaliation—Against All Defendants)**

85. Plaintiff re-alleges the allegations in paragraphs 1-84, inclusive, and hereby incorporates them by reference as though fully set forth herein.

86. At all relevant times, Univision was an employer within the meaning of the FEHA and thus covered by its provisions.

87. At all relevant times, Plaintiff was employed by Univision.

88. Plaintiff was eligible for medical leave under the CFRA.

89. Plaintiff requested and also attempted to take a protected medical leave under the CFRA for her own serious health condition.

90. Univision wrongfully discharged Plaintiff shortly after she had requested protected leave under the CFRA.

///

91. Plaintiff's request and/or her attempts to take protected leave were substantial motivating reasons for the adverse employment action(s) taken against her.

92. Plaintiff was harmed.

93. Univision's interference of Plaintiff's CFRA leave and/or retaliatory conduct because of her request for CFRA leave were substantial factors in causing Plaintiff's harm.

94. As a direct, foreseeable, and proximate result of Univision's wrongful conduct, Plaintiff will seek and is entitled to the damages described at paragraphs 43-48.

## SEVENTH CAUSE OF ACTION

### (Retaliation in Violation of Labor Code § 1102.5—Against All Defendants)

95. Plaintiff re-alleges the allegations in paragraphs 1-94, inclusive, and hereby incorporates them by reference as though fully set forth herein.

96. Labor Code § 1102.5(a) states that an employer, or any person acting on behalf of the employer, shall not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

97. Labor Code § 1102.5(b) also provides that employers and any persons acting on their behalf shall not retaliate against an employee for disclosing information that the employee has reasonable cause to believe discloses a violation of state or federal statute, or a violation or noncompliance with a local, state, or federal rule or regulation.

98. Here, Univision retaliated against Plaintiff for engaging in protected activity under Labor Code § 1102.5, including by terminating Plaintiff's employment.

99. Plaintiff is informed and believes and based thereon alleges that her protected activity of reporting unlawful conduct (i.e., violations of the FEHA) was the substantial motivating reason for Univision's retaliatory acts.

100. Plaintiff was harmed.

101. Univision's retaliatory conduct was a substantial factor in causing Plaintiff's harm.

102. As a direct, foreseeable, and proximate result of Univision's wrongful conduct, Plaintiff will seek and is entitled to the damages described at paragraphs 43-48.

### EIGHTH CAUSE OF ACTION

**(Wrongful Termination in Violation of Public Policy—Against All Defendants)**

103. Plaintiff re-alleges the allegations in paragraphs 1-102, inclusive, and hereby incorporates them by reference as though fully set forth herein.

104. At all relevant times, the public policy of the State of California—as codified, expressed and mandated by the FEHA and the CFRA—has been to prohibit employers (like Univision) from harassing, discriminating, and retaliating against individuals based on their disability/medical condition and/or based on their protected activity.

105. Based on the facts described herein, Univision's wrongful termination of Plaintiff violates the foregoing fundamental State public policies.

106. Plaintiff was harmed.

107. Univision's wrongful termination was a substantial factor in causing Plaintiff's harm.

108. As a direct, foreseeable, and proximate result of Univision's wrongful conduct, Plaintiff will seek and is entitled to the damages described at paragraphs 43-48.

### VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Univision and/or Defendants, jointly and severally, as follows:

1. For special, compensatory, and economic damages according to proof;
2. For general and/or non-economic damages according to proof;
3. For prejudgment interest;
4. For an award of exemplary and punitive damages according to proof;
5. For reasonable attorneys' fees available under all applicable statutes, including but not limited to under the FEHA, CFRA, Government Code § 12965(b), Labor Code § 1102.5, and Civil Code § 1021.5;
6. For penalties and premiums available under all applicable statutes, including but not limited to Labor Code § 1102.5;

7. For costs of suit herein incurred; and

8. For such other relief as the Court deems proper.

DATED: April 4, 2024                    **EQUITY LEGAL GROUP, P.C.**

By: _____
Kevin W. Chiang

Attorneys for Plaintiff
JANE DOE

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable in the Complaint.

DATED: April 4, 2024, 2024              **EQUITY LEGAL GROUP, P.C.**

By: _____
Kevin W. Chiang

Attorneys for Plaintiff
JANE DOE